Case No. 21-11016

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**MARY E. HARRIS,**

**Appellant**

**v.**

**PUBLIC HEALTH TRUST OF MIAMI-DADE COUNTY,**

**Appellee**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-cv-25298-KMM**

---

## APPELLEE'S ANSWER BRIEF

---

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1ˢᵗ Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

/s/ *Eric A. Rodriguez*
Assistant County Attorney
Florida Bar No. 970875
Attorney for Public Health Trust

CASE NO. 21-11016
Harris v. Public Health Trust

**Certificate of Interested Persons and**
**<u>Corporate Disclosure Statement</u>**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellee certifies that the following persons and entities may have an interest in the outcome of this case:

1. Blye, Tanesha W., Counsel for Plaintiff

2. Candela, William X., Assistant County Attorney, Counsel for Defendant/Appellee

3. Harris, Mary, Plaintiff/Appellant

4. Louis, Lauren Fleischer, United States Magistrate Judge, Southern District of Florida

5. Miami-Dade County Attorney's Office, Counsel for Defendant/Appellee

6. Migoya, Carlos, CEO, Jackson Health System

7. Moore, K. Michael, United States District Court Judge, Southern District of Florida

8. Public Health Trust, Defendant/Appellee

9. Rawsi Williams Law Group, Counsel for Plaintiff

10. Rodriguez, Eric A., Assistant County Attorney, Counsel for Defendant/Appellee

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

11.    Saenz & Anderson, PLLC, Counsel for Plaintiff

12.    Smukler, Aron, Counsel for Plaintiff

13.    Williams, Rawsi, Esq., Counsel for Plaintiff

*/s/  Eric A. Rodriguez*
Eric A. Rodriguez
Assistant County Attorney
Counsel for Appellee

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Public Health Trust respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT .....................................C1 of 2

STATEMENT REGARDING ORAL ARGUMENT ..................................................i

TABLE OF CONTENTS............................................................................................ ii

TABLE OF CITATIONS  ........................................................................................iv

STATEMENT OF JURISDICTION..................................................................... viii

STATEMENT OF THE ISSUES.............................................................................1

STATEMENT OF THE CASE.................................................................................2

SUMMARY OF ARGUMENT ..............................................................................13

I.      DISCUSSION.............................................................................................14

        A. THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED AS
           TO PLAINTIFF'S DISPARATE TREATMENT CLAIM BECAUSE
           PLAINTIFF DID NOT ESTABLISH A *PRIMA  FACIE* CASE OF
           RACE OR NATIONAL ORIGINAL DISCRIMINATION .................14

           1.  The Statement Attributed to Carreno is Not Direct Evidence of
               Discrimination..........................................................................................15

           2.  Harris Cannot Argue that Carreno is a Decisionmaker for the First
               Time on Appeal .......................................................................................16

B. THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED BECAUSE PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM BASED ON RACE OR NATIONAL ORIGIN ........................................................................................22

   1. The Incidents Harris Described Below are Insufficiently Severe or Pervasive to Establish a Hostile Work Environment ...........................22

   2. Harris Did Not Present Any Evidence that Her Inability to Access the Medical Supply Room Was Because of Her Race ...................23

   3. Harris "Background Evidence" Argument Should Not Be Considered for the first time on appeal........................................................26

   4. Harris Cannot Argue that Carreno Asked for Pictures and Information from a Co-Worker for the First Time on Appeal ...........29

   5. One Racially Derogatory Statement Over 16 Months is Insufficient to Establish a Hostile Work Environment ..................................................30

C. THE DISTRICT COURT PROPERLY AWARDED SUMMARY JUDGMENT AS TO PLAINTIFF'S RETALIATION CLAIMS.........31

   1. Plaintiff Cannot Argue for the First Time on Appeal that Internal Complaints Amounted to Protected Activity.....................................31

   2. Plaintiff Cannot Establish *Prima Facie* Case of Retaliation as to Her Suspensions or Termination Based on her Internal Complaints ......33

D. HARRIS CANNOT SHOW ANY CAUSAL CONNECTION BETWEEN CARRENO'S ALLEGED UNLAWFUL ANIMUS AND HER SUSPENSIONS AND TERMINATION...............................................36

   1. CNO Nieves Conducted an Independent Investigation Before Dismissing Plaintiff .........................................................................36

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

E. HARRIS CANNOT SHOW THAT JHS' REASONS FOR DISCIPLINING AND DISMISSING HER WERE A MERE PRETEXT FOR DISCRIMINATION OR RETALIATION ........................................... 37

    1. Dismissal by CNO Nieves ................................................. 39

    2. Three-Day and Five-Day Suspensions ............................... 41

CONCLUSION ......................................................................................... 45

CERTIFICATE OF COMPLIANCE ....................................................... 46

CERTIFICATE OF SERVICE ................................................................ 46

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# **TABLE OF CITATIONS**

**Cases**                                                                 **Page**

*Access Now, Inc. v. Sw. Airlines Co.*, ..........................................................19, 30, 33
    385 F.3rd 1324, 1331-32 (11th Cir. 2004)

*Adler v. Duval Cnty. Sch Bd.*, ...............................................................30
    112w F.3rd 1474, 1481 . 12 (11th Cir. 1997)

*Anterio v. City of High Springs*, ............................................................36
    762 Fed. Appx. 891, 899 (11th Cir. 2019)

*Baker v. Russell* Corp, ...................................................................38, 43
    372 Fed. Appx. 917, 920 (11th Cir. 2010)

*Barrow v. Ga. Pacific Corp.*, ..............................................................24, 34
    144 Fed. Appx. 54, 57 (11th Cir. 2005)

*Beinkowski v. Jordan Properties, Inc.*, .................................................18
    2013 WL 810298 (D.S.C. Mar. 5, 2013)

*Blackshear v. Univ. of Ala.*, ..............................................................38
    2013 WL 5934653, *6 (N.D. Ala. 2013)

*Blue Martini v. Miami Dade County*, ...................................................19
    816 F.3d 1343, 1349 (11th Cir. 2016)

*Butler v. Ala. Dep't of Transp.*, ............................................................34
    536 F. 3d 1209, 1314 (11th Cir. 2008)

*Chapman v. Al Transports*, ..............................................................15, 41
    229 F.3d 1012, 1024-25 (11th Cir. 2000).

*Chavez v. Sec'y Fla. Dept. of Corr.*, ........................................................2
    647 F.3d 1057, 1061 (11th Cir. 2011)

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

*Chughtai v. Kaiser Permanente*, ...........................................................................28
    2018 WL 3049198, *6 (June 10, 2018)

*Clover v. Total Sys. Servs., Inc.,* .........................................................................34
    176 F.3d 1346, 1351 (11th Cir. 1999).

*Davis v. United States Postmaster*, ......................................................................25
    190 Fed. Appx. 874, 876 (11th Cir. 2006)

*Dorrego v. Public Health Trust,* ..........................................................................16
    293 F. Supp. 2d 1274, 1283, 1284 (S.D. Fla. Oct. 24, 2001)

*Echeverria v. BAC Home loan Servicing. LP.,* ......................................................30
    523 Fed. Appx 675, 678 (11th Cir. 2014)

*Elrod v. Sears, Roebuck & Co.,* ...........................................................................40
    939 F.2d 1466, 1470 (11th Cir. 1991)

*Guthrie v. Wallace House Inc.,* .............................................................................24
    450 Fed. Appx. 1238, 1247 (11th Cir. 2012)

*Harris v. Forklift Sys., Inc*., ................................................................................22
    510 U.S. 17, 21 (1993)

*Holley v. N.C. Dept. of Admin*., ............................................................................29
    846 F. Supp. 2d 416 (E.D. N.C. 2012)

*Hong v. Children's Memorial Hosp*., .....................................................................34
    993 F.2d 1257, 1266 (7th Cir. 1993)

*Ikejiani v. Dade County Public Health Trust*, ........................................................38
    2003 WL 157233, at *6 (S.D. Fla. Feb. 18, 2003)

*Jolibois v. Florida International University*, ..........................................................41
    92 F. Supp. 1239 (S.D. Fla. 2015)

*Lattrece Lockeet v. Choice Hotels Int'l, Inc.,* .........................................................24
    315 Fed. Appx. 862, 866-67 (11 Cir. 2009)

*LeBlanc v. TJX Companies, Inc.,* ..................................................................22
    214 F. Supp. 2d 1319, 1331 (S.D. Fla. 2002)

*Lewis v. City of Union City, Ga.*, ...........................................................14, 15
    918 F.3d 1213, 1220 n. 6 (11 Cir. 2019)

*McCann v. Tillman,* ................................................................................24, 31
    526 F.3d 1370, (11th Cir. 2018)

*Mendoza v. Borden, Inc.*, .............................................................................25
    195 F.3d 1238, 1247-49 (11 Cir. 1999)

*Miller v. Kentworth of Dothan, Inc.*, ......................................................22, 26
    277 F.3d 1269, 1275 (11th Cir. 2002)

*Mora v. Univ. of Miami,* ..............................................................................20
    15 F. Supp. 2d 1324, (S.D. Fla. July 14, 1998)

*Roark v. 3M Company*, ..................................................................................44
    339 F.R.D 127, 129 (E.D. Kentucky Aug. 3, 2021)

*Seldon v. Total Servs., Inc.,* .........................................................................20
    653 F.2d 1349, 1381 (M.D. Ga 2009)

*Sonpon v. Grafton School, Inc.*, ....................................................................16
    118 F. Supp. 2d 494, 499 (D. Md. Jan. 24, 2002)

*Standard v. A.B.E.L.  Servs., Inc.*, ..............................................................
    161 F.3rd 1318, 1330 (11th Cir. 1998)

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

*Thomas v. Dade County Public Health Trust,* ........................................................16
    177 F. Supp. 2d 1283, 1289 (S.D. Fla. Sept. 20, 2001)

*Thurston v. Henderson,* ........................................................................29
    230 F.3rd 1347 1 (1st Cir. 2000)

*Tex. Dep't of Cmty Affairs v. Burdine,* .............................................15
    450 U.S. 248, 253 (1981)

*University of Texas Southwestern Medical Center v. Nassar,* .............................39
    133 S.Ct. 2517, 2528 (2013)

*Vasell v. American Bldg. Maintenance Northeast Janitorial, Inc.,* ........................20
    *2010 WL 11623371, \*6 (E.D. N.Y. July 6, 2020)*

*Weeks v. Harden Mfg. Corp.,* ...............................................................33
    291 F.3d 1307, 1312 (11th Cir. 2002).

*Wells v. General Dynamics Info Tech Inc.* ...........................................24
    571 Fed,. Appx. 732, 736 (11th Cir. 2014)

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## <u>STATEMENT OF JURISDICTION</u>

This case is on appeal following the District Court's Order granting the Public Health Trust's Motion for Summary Judgment on February 27, 2021. This Court has jurisdiction under 28 U.S.C. § 1291.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

## STATEMENT OF THE ISSUES

1. Whether the District Court 's Order Granting Summary Judgement as to Appellant's disparate treatment race and national origin discrimination claims should be affirmed based on the District Court's finding that Appellant did not establish direct evidence of discrimination?

2. Whether the District Court's Order Granting Summary Judgment should be affirmed as to Appellants' disparate treatment and retaliation claims should be affirmed based on the District Court's findind that Appellant was suspended and terminated for legitimate non discriminatory non retaliatory reasons – namely that Appellant was tardy, absent, rude to patients, called her female supervisors "bitches" and then threated to have them fired?

3. Whether the District Court 's Order Granting Summary Judgement should be affirmed as to Appellant's hostile  work environment claim based on the District Court's finding that supervisor's derogatory statement and conduct was not severe or pervasive?

## STATEMENT OF THE CASE[1]

Public Health Trust ("PHT") is a public institution and operates Jackson Health System ("JHS") which consists of hospitals and clinics including Jackson North Medical Center ("Jackson North") and Jefferson Reeves Senior Health Center ("Jefferson Reeves").  [ECF No. 32-1 ¶ 1]

Plaintiff Mary Harris ("Harris") was hired by JHS in 2007 as a Licensed Practical Nurse 2 ("LPN2") and assigned to Jackson North Emergency Care Department ("Jackson North"). [ECF No. 32-2 ¶ 6]  As a LPN2, Harris "performs a variety of nursing care assignments in one or more inpatient or outpatient areas, requiring more advanced knowledge and skills of practical nursing." (*Id*.). JHS issued Harris an identification badge that is connected to the Kronos system that records her work hours. (*Id*.).

---

[1]     As set forth in the District Court's Order at p.1 f.n.1, the undisputed facts are taken from Defendant's Statement of Material Facts (Def's 56.1) [ECF No. 32], and Plaintiff's Response in Opposition to Defendant's Statement of Material Facts (P's Resp. 56.1) [ECF No. 42], and a review of corresponding record citations and exhibits. In this Appeal, Harris improperly seeks to accuse the district court of error based on facts that Harris  has belatedly extracted from her deposition that Plaintiff did not bother to bring to the District Court's attention in her 56.1 statement of material facts [ECF No. 42].  This is evident throughout Harris' brief where she does not cite to [ECF No. 42], but cites directly to Harris' deposition [ECF No. 32-5] Facts that were not included in Plaintiff's 56.1 statement are not properly advanced for the first time on appeal and should not be considered. *Chavez v. Sec'y Fla. Dept. of Corr*., 647 F.3d 1057, 1061 (11th Cir. 2011) (noting that district court has no independent obligation to "mine the record").

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

Harris was a bargaining unit member of AFSCME Local 1363 ("the Union"). [ECF No. 32-3 ¶ 7] The Union and JHS are parties to a collective bargaining agreement ("CBA"). (*Id*.). Pursuant to Article 12 of the CBA, JHS employees may appeal discipline issued by JMH management. (*Id.).*

JHS has a computerized time keeping and attendance system called Kronos. [ECF No. 32-1 ¶ 2] When JHS hourly employees arrive at their designated work location they must swipe their JHS badge at the beginning of their shift and swipe out at the end of their shift, which is recorded by Kronos. (*Id*.). If an employee is late or absent, it is noted in Kronos and reported to the employee's immediate supervisor. (*Id*.).

**JHS Discipline Policy**

Pursuant to JHS Discipline Policy, a JHS employee who is alleged to have violated JHS personnel rules will receive a Discipline Action Report ("DAR") setting forth the rule violations and pertinent facts. [ECF No. 32-1 ¶ 3] The employee may respond to the DAR in writing or in person. [ECF No. 32-2 ¶ 3] The employee's response is then reviewed by the JHS decisionmaker who issues the level of discipline. *(Id.).*

The level of discipline will depend on the severity of the violation and on the employee's previous disciplinary history. [ECF No. 32-2 ¶ 4] Disciplinary action is typically, although not necessarily, issued in the following progression: 1) Written

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

Reprimand; 2) First Level Suspension (3 day suspension); 3) Second Level Suspension (5 day suspension); and 4) Termination. (*Id*.).

### Harris Receives Written Reprimand Because She is Rude and Disrespectful to Patients

In 2014, while at Jackson North, Harris received a DAR after two patients complained that Harris was rude and disrespectful. [ECF No. 32-2 ¶ 9] Specifically, Harris "made inappropriate comments towards others" and "inconsiderate responses to patient family needs." (*Id.*). As a result of her conduct, Harris received a Written Reprimand. (*Id.*).

### Harris Transfers to Jefferson Reeves Clinic Per Harris Hardship Request

In March 2014, Harris' position at Jackson North was eliminated and Harris was reassigned to a vacant LPN2 position at the South Dade Homeless Center. [ECF No. 32 ¶ 11] Harris requested a hardship exception to this reassignment. (*Id.*). JHS Labor Relations Director Roberto Campos-Marquetti ("Campos-Marquetti") granted Harris' hardship exception and reassigned Harris to Jefferson Reeves. [ECF No. 32-4 ¶ 12] Jefferson Reeves is an outpatient clinic that provides health services to mostly elderly indigent patients. (*Id.*).

### Harris' Chain of Command at Jefferson Reeves

Harris started working at Jefferson Reeves on March 16, 2014. (*Id.*). Harris reported to Associate Nurse Manager Roselyn Lys ("RN Lys"), who is a Black woman, as is Harris. [ECF No. 32-4 ¶ 13] RN Lys reported to Christian Chevalier,

Associate Director Ambulatory Services.  (*Id.*).

Rachel Freeman ("Administrator Freeman[2]"), served as the Administrator of Ambulatory Services at Jefferson Reeves and was responsible for employee discipline. [ECF No. 32-4 ¶ 14] Administrator Freeman is also a Black woman.  Administrator Freeman reported to Caridad Nieves, Chief Nursing Officer Ambulatory Services ("CNO Nieves"). (*Id.*).  CNO Nieves had the sole authority to suspend and dismiss employees such as Harris. (*Id.*).

**Administrator Freeman Issues Harris A Record of Counseling for Tardiness**

On December 3, 2014, Administrator Freeman issued Harris a Record of Counseling (ROC) because Harris was late to work twice in October.  [ECF No. 32-4 ¶ 15]   In this ROC, Administrator Freeman admonished Harris that "(y)our repeated tardiness is a hardship to the unit." (*Id*) and advised Harris "it is expected that you will immediately correct your lateness problem or further action will be deemed necessary, up to and including dismissal." (*Id.*).

**Carreno Allegedly Makes a Single Remark**

In March 2015, Gianella Carreno ("Carreno"), a Hispanic female, replaced Chevalier and became the Associate Director of Ambulatory Services.  [ECF No. 32-5 ¶ 16] Carreno had not previously worked with Harris, either at Jefferson Reaves or previously when Harris worked at Jackson North.  According to Harris in August

---

[2] The district court opinion referred to Administrator Freeman as "Admin. Freeman."

2015, about six months after Carreno began working at Jefferson Reeves, Carreno said "blacks are lazy, and don't like to work." (*Id*.). [ECF No. 32-5 ¶ 16] Other than that one remark that was not directed at Harris, Harris never heard anyone from JHS management make a disparaging statement regarding Harris' race. [ECF No. 32-5 ¶ 17]

> Q. (Mr. Candela)    Okay … Other than Ms. Carreno's statement where you say that she said blacks are lazy and do not want to work, you never heard any other JMH administrator make a derogatory statement about your race, correct?
>
> A. (Ms. Harris) I don't recall.  I don't recall.
>
> Q. So, the only derogatory statement that you recall from a JMH administrator is the one you told me earlier where Ms. Carreno said blacks are lazy and do not want to work, correct?
>
> A. That is correct.

(*Id.*).

According to Harris, after Carreno made that remark in August 2015, Carreno racially harassed Harris by: a) tapping Harris on the shoulder once in January 2016 [ECF No. 32-5 ¶ 13];  and b) denying her access to the medical supply room in 2016 which Harris resolved by asking RN Lys for access to the supply room (*Id*.).

> Q. (Mr. Candela)    Did you ask Ms. Freeman why don't I have access to the supply room?
>
> A. (Ms. Harris) I asked Ms. Roseline Lys … She said, "go to this person and tell them what you need" or "go to that person."
>
> Q. Okay, did you go to that person as per Roseline Lys, and were provided the supplies that you need?

A.    They opened the door.  They stood by me, opened the door, and
       I went in and got the supplies.

(*Id*; Harris dep. p. 136).

Harris also claims that Carreno followed her at work.

**RN Lys Issues Harris A Written Reprimand For Tardiness and Absenteeism**

In January 2016, RN Lys issued Harris a DAR because the Kronos records reflected that Harris was absent five times within a six-month period and then absent twice in a one-month period. [ECF No. 32-6 ¶ 19]  Additionally, Harris was tardy three times. (*Id*). **Harris does not dispute that she was tardy as charged in the DAR**.

Q.    (Mr. Candela)        Ms. Roseline Lys wrote you up for being
       tardy on other occasions, isn't that right?

A.    (Ms. Harris) Correct.

**Q.    And, in fact, that is because you were tardy.**

**A.    Correct.**

(emphasis added).  (*Id*.). Harris is not aware of another employee at Jefferson Reeves that was late to work and was not "written up." (*Id*.).

Admin.  Freeman  issued  Harris  a  written  reprimand  as  a  result  of  the allegations in the DAR. [ECF No. 32-6 ¶ 20]    In this written reprimand, Admin. Harris warned  Harris that "(y)our behavior as described herein is unacceptable, and continued violation of these policies will be grounds for …termination." (*Id*.). The

7

written reprimand was not accompanied with a loss of pay.

**Harris is Absent Again and Receives A Three-Day Suspension**

On June 10, 2016, RN Lys issued Harris a DAR because Kronos records reflected that Harris had been absent on March 30, 2016, April 14, 2016 and May 25, 2016. [ECF No. 32-6 ¶ 21].   Pursuant to JHS' progressive discipline guidelines, Admin. Freeman suspended Harris for three days based on the infractions identified in the DAR. (*Id*.).

**Harris Receives A Five-Day Suspension Because Harris Was Rude To A Patient and Tardy**

On August 3, 2016, Administrator Freeman issued Harris a DAR because Harris' rude or offensive conduct towards patients. [ECF No. 32-7 ¶ 22]  As set forth in the DAR, on July 11, 2016, Harris was rude to a JHS patient named Ms. Contreras. (*Id*.).   Ms. Contreras complained that while waiting to get a vaccine shot, "she [Harris] did not explain to me why she did not give me the shot."  Ms. Contreras added that, "I know we are human, we are not perfect but she could have apologized to us.  We are not dogs." (*Id*.).   Additionally on June 28, 2016, in violation of JHS rules, Harris swiped in at a time clock location that was not at her assigned time clock at Jefferson Reeves.

On September 14, 2016, CNO Nieves issued Harris a five-day suspension based on the August 3, 2016 DAR. [ECF No. 32-7 ¶ 23]    In this suspension letter, CNO Nieves informed Harris that "(y)ou have been provided ample opportunity to

demonstrate improvement but you continue to demonstrate that you are not willing to do so … When you return to work …, you will be required to show immediate improvement regarding your conduct. Your failure to so will result in further action being taken up to and including dismissal." (*Id.*).

**Harris is Insubordinate to RN Lys and Refers to her Supervisors as "Bitches"**

On November 9, 2016, RN Lys asked Harris to make sure that the Jefferson Reeves procedure room had the necessary supplies for the next day. [ECF No. 32- 7 ¶ 24]. In response, Harris said to her supervisor RN Lys "**No, you do it**." (*Id.*). RN Lys reminded Harris that supplies were needed because there was a medical procedure scheduled for the next day (*Id.*). While RN Lys was speaking, Harris walked away. (*Id.*).  Harris' insubordination was witnessed by JHS Nurse Navigator Ivonne Millanes. (*Id.*).

After Harris walked away from RN Lys, Harris said "I am going to get those bitches fired" and "I am going to get Rachel Freeman, Gianella Carreno and Ros Lys terminated." [ECF No. 32-8 ¶ 25]   Medical Technicians Jennifer Murray[3] and Marie Jean Francois heard Harris make these statements. (*Id.*) (See ECF No. 33; Declaration of Marie Jean Francois).   Despite the three witnesses to her conduct, Harris denied that she called her supervisors "bitches" or walked away from RN Lys.

**Administrator Freeman Places Harris on Administrative Leave**

---

[3] Jennifer Murray is an AFSCME Union Shop Steward.

On November 16, 2016, Administrator Freeman placed Harris on administrative leave *with pay*. [ECF No. 8 ¶ 26] While on administrative leave with pay, Harris received her regular pay and benefits. (*Id*.).   Carreno was not involved in the decision to place Harris on administrative leave. (*Id*.).

On November 18, 2016, Administrator Freeman issued Harris a DAR addressing several incidents including Harris' insubordination towards RN Lys. [ECF No. 32-8 ¶ 27] The DAR also charged Harris with saying "I am going to get those bitches fired" and "I am going to get Rachel Freeman, Gianella Carreno and Ros Lys terminated." (*Id.*).

**Harris Files Discrimination Charge With the EEOC**

On December 8, 2016, Harris filed a charge of race, national origin and retaliation – based discrimination with the Equal Employment Opportunity Commission ("EEOC"). [ECF No. 32-8 ¶ 28] *Harris did not inform anyone at JMH that she had filed a discrimination charge with the EEOC*. (*Id*.).  Harris never heard anyone from JMH management make a retaliatory statement. (*Id*.).

**CNO Nieves Meets with Harris and her Union Representatives**

On December 9, 2016, Harris along with her Union representatives Vivienne Dixon and Mishell Warner met with CNO Nieves to respond to the charges in the DAR. [ECF No. 32-9 ¶ 29].  CNO Nieves prepared for this meeting by reviewing a two-year summary of Harris' disciplinary history written by Administrator Freeman.

(*Id*.). CNO Nieves also reviewed the email sent by Nurse Navigator Ivonne Milanes describing the events of November 9, 2016, wherein Harris was insubordinate to RN Lys. (*Id*.). Additionally, Nieves considered Administrator Freeman's recommendation for dismissal. (*Id*.).

**CNO Nieves Dismisses Harris for Insubordination**

Ultimately, after listening to Harris and her union representatives, CNO Nieves determined that dismissal was the appropriate level of discipline. [ECF No. 32-9 ¶ 30]. Specifically, CNO Nieves found that based on the severity of the violations, namely, Harris' insubordination toward RN Lys, and referring to her supervisors as "bitches," dismissal was appropriate. (*Id*.). Additionally, Harris had already received a written reprimand, a 3-day suspension and a 5-day suspension. Dismissal was the next level of discipline pursuant to JMH progressive discipline policy. (*Id.*). Consequently, on December 21, 2016, CNO Nieves dismissed Harris. (*Id*.).

CNO Nieves was not aware that Harris had complained of discrimination or that Harris had filed a charge of discrimination with the EEOC, which is consistent with Harris' admission that she had not told anyone at JHS that she had filed an EEOC Charge. [ECF No. 32-28 ¶ 28]

**Harris' Union Representative Admits that Harris Acted Inappropriately to her supervisor RN Lys**

On January 10, 2017, Harris challenged her dismissal by filing a grievance

pursuant to the CBA. [ECF No. 32-9 ¶ 31]. On February 8, 2017, a grievance hearing was held before Campos-Marquetti, serving as a Hearing Officer. (*Id*.). Campos-Marquetti is a Black male. (*Id*.).   As the Hearing Officer, Campos-Marquetti had the authority to affirm, reverse or modify CNO Nieves' dismissal of Harris. (*Id*.).

At the grievance hearing, Norman Herdocia ("Herdocia"), the Union Regional Coordinator representing Harris "admitted and agreed that that Harris response to her supervisor [RN Lys] as alleged in the DAR …was inappropriate…" [ECF No. 32-10 ¶ 32].  Herdocia argued that Harris was "unjustly terminated" and she should be given "another chance." (*Id*.). Campos-Marquetti sustained Harris' dismissal based on Harris' disciplinary record, and *inter alia*, Herdocia's admission that Harris should not have said "I will not do that" and to "have walked away from RN Lys." (*Id*.).

After her dismissal from JHS, in March 2017, the University of Miami Health Systems ("UHealth"), hired Harris as a licensed practical nurse making a higher salary than she did at JHS.  [ECF No. 32-10 ¶ 34] Harris does not seek reinstatement to JHS. (*Id*.).

On May 14, 2020, Harris filed a six- count Amended Complaint alleging employment discrimination under Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act ("FCRA"). [ECF No. 19]

## SUMMARY OF ARGUMENT

In this employment discrimination case, the Appellant Mary Harris relies on arguments and facts that were not raised below in seeking reversal of the District Court's Order Granting Summary Judgment.  But the District Court did not err in finding that Appellant was suspended and then terminated for legitimate non discriminatory  non retaliatory reasons – namely that Appellant was tardy, absent, rude to patients, insubordinate and called her female supervisors "bitches" before she threatened to have them fired. Additionally, the District Court's Order should be affirmed because the Appellant did not rebut the reasons for her discipling her "head on" and show that these were a pretext for unlawful discrimination and retaliation.

Finally, the District Court's Order should be affirmed because Appellant did not show that she was subjected to a racially hostile work environment as a result of a her supervisor's single derogatory statement and conduct consisting of tapping the appellant's shoulder, following her at work and restricting her access to the medical supply room. These incidents taken together were not sufficiently severe or pervasive to constitute a racially hostile work environment

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

# I. DISCUSSION

## A. THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED AS TO PLAINTIFF'S DISPARATE TREATMENT CLAIM BECAUSE PLAINTIFF DID NOT ESTABLISH A *PRIMA FACIE* CASE OF RACE OR NATIONAL ORIGINAL DISCRIMINATION

Title VII act forbids employers from "discrimina[ting] against any individual with respect to his compensation, terms conditions, or privilege of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-(2)(a)(1). A plaintiff can present direct evidence of discriminatory intent or demonstrate a 'convincing mosaic' of circumstantial evidence that warrants an inference of intention discrimination." *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 n. 6 (11th Cir. 2019) (citations omitted). A plaintiff will survive summary judgment by satisfying the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green.* The *McDonnell Douglas* framework sets forth a process by which a plaintiff who cannot present direct evidence of discriminatory intent can make out a claim for Title VII discrimination via circumstantial evidence. *See generally* 411 U.S. 792 (1973).

Under the first stage of *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing: (1) that she belongs to a protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified to continue to do her job; and (4) employees outside

her protected class, but otherwise "similarly situated" were treated more favorable. *Lewis*, 918 F.3d at 1220-21.  If the plaintiff so shows, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id*. at 1221 (citing *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Finally, should the defendant meet its burden to articulate a legitimate non-discriminatory reason(s) for  the employment action, the plaintiff shoulders a new burden to "demonstrate that the defendant's proffered reasons was merely a pretext for unlawful discrimination." *Id*. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment."  *Chapman v. Al Transports*, 229 F.3d 1012, 1024-25 (11th Cir. 2000).

### 1. The Statement Attributed To Carreno is Not Direct Evidence of Discrimination

Harris argues that she was disciplined because of her race and national origin in violation of Title VII and FCRA. [4] Harris concedes that there is no circumstantial evidence of discrimination and proceeds under the direct evidence model.  Direct evidence is evidence, that if believed, proves the existence of a fact in issue without interference or presumption. Only the most blatant remarks, whose intent could

---

[4] Although the operative complaint also alleged national origin discrimination, Plaintiff below and Appellant now does not set forth any evidence to advance the national origin theory, instead relying on race discrimination as the basis for her disparate treatment and hostile work environment claims.  Thus, any claim for national origin is either abandoned or not supported.

15

mean nothing other than to discriminate on the basis of some impermissible factor constitute evidence of discrimination. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption.  Therefore, remarks by non-decisionmakers or remarks unrelated to the decision making process itself are not direct evidence of discrimination."  *Standard v. A.B.E.L. Servs., Inc.* 161 F.3d 1318, 1330 (11th Cir. 1998).

### 2. Harris Cannot Argue that Carrerno is a Decisionmaker for the First Time on Appeal

In its Motion for Summary Judgment JHS argued that Harris could not establish direct evidence of discrimination because the single derogatory statement attributed to Carreno –"blacks are lazy, they don't like to work"  was not made in conjunction with Harris' suspensions or termination.  [ECF No. 31-11].  In support of this argument, JHS relied on *Dorrego v. Public Health Trust*, 293 F. Supp. 2d 1274, 1283, 1284 (S.D. Fla. Oct. 24, 2001) and *Thomas v. Dade County Public Health Trust*, 177 F. Supp. 2d 1283, 1289 (S.D. Fla. Sept. 20, 2001) with accompanying parentheticals emphasizing that direct evidence must be related to the challenged employment decision and must have been stated by a decisionmaker.

In response to summary judgment before the district court, Harris did not challenge JHS' argument that Carreno's statement was not made in connection with the disciplinary actions at issue. Harris, moreover, did not argue that Carreno was a

decisionmaker. Indeed, in her Response to JHS' Statement of Material Facts, Harris did not contest that Administrator Freemen (who is also Black) was responsible for discipline at Jefferson Reeves and that only CNO Nieves had authority to issue suspensions and terminate employees.

Instead, in her Response to JHS' Motion for Summary Judgment, Harris **only** argued that Carreno's statement, standing alone, was direct evidence and nothing more. "[H]ere, there is no presumption needed to understand what Carreno meant by her comment. This statement doesn't merely suggest a motive, it facially presents one, and clearly establishes Carreno's racially charged animus directed towards Plaintiff and others in the protected class of African Americans." [ECF No. 43-8]. In its Reply Memorandum in Support of its Motion to Summary Judgment, JHS emphasized that Harris did not respond to its argument that Carreno's statement was not made in connection to the discipline. [ECF No. 45]

Based on the record and arguments developed by the parties below, the District Court determined that Harris did not establish direct evidence of discrimination. The District Court found that Harris failed to respond to JHS' argument that the alleged derogatory statement was not made in connection to the discipline. "Plaintiff does not directly respond to this argument, instead relying heavily on having made out her claim as required under *McDonell Douglas*. …Indeed, this statement, which by all accounts is the only derogatory remark that

Plaintiff encountered is both "too remote in time [and] too attenuated to as to the employment actions in question to be direct evidence of discrimination in this case." [ECF No. 49-7]   The Court's conclusion is supported by Harris' brief on appeal. Appellant claims that the district court erred in finding that the Carreno statement was too remote in time.  Appellant appears to have overlooked that in her own brief she states that: "**A little over a year later** [after the alleged Carreno statement], Ms. Harris had received multiple disciplinary actions, placement on administrative leave, and, ultimately, a termination notice – all of which she blames on Ms. Carreno's racist views." (App. Brief at 15)  (emphasis added)  If it was over a year later, then the district court's decision that it was too remote in time to be temporally connected is correct.  The same is true if there was a three month lag between Carreno's statement and the discipline that followed. *Beinkowski v. Jordan Properties, Inc.*, 2013 WL 810298 (D.S.C. Mar. 5, 2013) (holding that comments made three months prior to termination too remote to be considered direct evidence); *Brown v. Nguyen*, 2010 WL 836819, at * 15 (D.S.C. Mar. 5, 2010) (holding comments made four months prior and unrelated to adverse employment action too remote to be a direct evidence).

Remarkably, on appeal Harris takes a completely different tack.  Harris now abandons the circumstantial evidence theory she championed below and strenuously argues for the first time that 1) Carreno's statement was connected to the

disciplinary actions at issue and 2) Carreno was a decisionmaker. (App. Br. pp. 15-18) A comprehensive review of Harris' Response to summary judgment below reveals that she **never** argued that Carreno was a decisionmaker. [ECF No. 42-43] The only decisionmaker identified by the parties was Administrator Freeman and CNO Nieves. [ECF No. 32-4 ¶ 14].  Having failed to raise these arguments before the District Court, Harris cannot advance them now. *Towns  v. Directors Guild of America, Inc*. et. al. 20022 WL 169017, 4 (11th Cir. 2022) ("The problem for Town is he raises this issue for the first time on appeal.  We generally do not consider issues raised for the first time on appeal.") citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3rd 1324, 1331-32 (11th Cir. 2004) ("The reason for this prohibition is plain: as a court of appeal, we review claims of judicial error in the trial court"). *Accord Blue Martini v. Miami Dade County*, 816 F.3d 1343, 1349 (11th Cir. 2016) ("As a general rule, an issue not raised in the district court and raised for the first time in an appeal will not be considered by this Court').  Accordingly, the District Court's Order granting summary judgment should be affirmed.

Even assuming that Harris argued below that Carreno was a decisionmaker (which she did not), Harris failed to present any evidence below that Carreno was a decisionmaker and the undisputed facts are that none of the DARs were issued by Carreno.  As such, Carreno's statement is not direct evidence of race discrimination because it is not related to the discipline at issue. According to Harris, Carreno made

the statement in September 2015. RN Lys issued Harris the DAR for being tardy and absent five months later in January 2016. [ECF No. 32-6 ¶ 19] Too much time elapsed between the statement and the DAR for tardiness. And more to the point, in response to summary judgment, Harris never identified that Carreno issued the written reprimand. Instead, it was undisputed below that RN Lys, who is also Black, issued the DAR for the written reprimand. (*Id*.).

Harris, moreover, readily **admitted that she was tardy as charged**.

Q.    (Mr. Candela)    Ms. Roseline Lys wrote you up for being tardy on other occasions, isn't that right?

A.    (Ms. Harris) Correct.

Q.    And, in fact, that is because you were tardy.

A.    Correct.

[ECF No. 32-6 ¶ 19]

Under these facts, the District Court correctly held that Carreno's statement is "too remote in time and attenuated as to employment actions in question …" [ECF No. 49-7]  *Sonpon v. Grafton School, Inc*., 118 F. Supp. 2d 494, 499 (D. Md. Jan. 24, 2002) (supervisor's comment that plaintiff was a lazy African woman did not constitute direct evidence of discrimination); *Mora v. Univ. of Miami*, 15 F. Supp. 2d 1324, (S.D. Fla. July 14, 1998) (Supervisor's statement that "the Columbian is lazy, he doesn't like to work" did not constitute direct evidence of national origin discrimination). *Vasell v. American Bldg. Maintenance Northeast Janitorial, Inc.*,

2010 WL 11623371, *6 (E.D. N.Y. July 6, 2020) (granting summary judgment in Title VII case because that "plaintiff's statement that she overheard Whiten saying blacks are lazy is not sufficient to avoid summary judgment …"). Accordingly, the District Court's Order should be affirmed.

Even assuming Harris did establish a *prima* facie case of disparate treatment discrimination on Appeal, Harris does not address in her Initial Brief the legitimate non-discriminatory reasons the District Court relied on awarding summary judgment to the disparate treatment claims. Harris only addressed the *prima facie* issue in her Initial Brief. A review of the legitimate non-discriminatory reasons for the disciplines at issue reflect that those reasons were presented below and on appeal, Harris has not challenged each of those reasons and certainly has not demonstrated that there was sufficient evidence of pretext to avoid summary judgment on the disparate treatment claim. As more fully explained in Sections D and E *infra*, even if Appellant had adequately made a pretext argument on appeal regarding the disparate treatment claim, Appellant did not present sufficient evidence of pretext below to avoid summary judgment and certainly does not present anything close to demonstrating pretext on appeal either. Thus, the District Court's order should be affirmed.

**B. THE DISTRICT COURT'S ORDER SHOULD BE AFFIRMED BECAUSE PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT CLAIM BASED ON RACE OR NATIONAL ORIGIN**

The Supreme Court has interpreted Title VII to extend to employers who require "people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). To set forth a *prima facie* case of hostile work environment based on race or national origin, a plaintiff must show the following: (1) she belongs to a protected class; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (40) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatorily abusive work environment; and (5) the employer is either vicariously or directly responsible for the environment. *LeBlanc v. TJX Companies, Inc.,* 214 F. Supp. 2d 1319, 1331 (S.D. Fla. 2002) (citing *Miller v. Kentworth of Dothan, Inc*., 277 F.3d 1269, 1275 (11th Cir. 2002)).

1. **The Incidents Harris Described Below are Insufficiently Severe or Pervasive to Establish a Hostile Work Environment**

In support of her hostile work environment claim, Harris points to Carreno's 2015 statement "Blacks are lazy that's why I won't hire them," and Carreno's 2016 conduct - touching her shoulder and following her. Carreno's statement and conduct are clearly insufficient to create a *prima facie* case of a racially hostile work

environment because they are sporadic events over 16 months.  Thus, the District Court's Order should be affirmed.

2. **Harris Did Not Present Any Evidence that Her Inability to Access the Medical Supply Room Was Because of Her Race**

In her Response, Harris argued Carreno also harassed her by not providing her access to the medical supply room. [ECF No. 43-4 ¶ 16-18] But Harris did not provide any evidence that Carreno denied her access to the medical supply  room because of her race. Indeed, in her Response,  Harris, moreover, did not argue that some type of an inference should be made which would support an argument that Harris was denied access to the medical supply room because of her race. For example, Harris did not present evidence in her Response to Defendant's Statement of Material Facts that she was the only LPN at Jefferson Reeves that denied access to the supply room, or that only Black employees were denied access to the supply room.

Additionally, the District Court noted that Harris was able to retrieve the medical supplies by simply asking another employee for access. "Although Plaintiff testifies that she was restricted access to the supply closet, she does not offer any evidence suggesting that this materially altered her day-to-day responsibilities: she merely had to wait for an authorized person to open the door for her to get the supplies."   [ECF No. 49-16]

Similarly, Harris did not present any evidence that Carreno tapped her once

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

on her shoulder **because** of her race and this one-time incident does not support her hostile work environment claim. *Wells v. General Dynamics Info Tech Inc*., 571 Fed,. Appx. 732, 736 (11th Cir. 2014) ("we affirm the district court's grant of summary judgment on [plaintiff's] hostile work environment claims because she has not demonstrated a material dispute of fact: 1) that the harassment was based on her membership in the protected group…").

In reviewing Eleventh Circuit precedent, the conduct alleged by Harris does even come close to rising to the level of severe or pervasive conduct as discussed in prior precedents.

First, the one-time derogatory statement is insufficient. *Barrow v. Ga. Pacific Corp.*, 144 Fed. Appx. 54, 57 (11th Cir. 2005) (holding that where black employee claimed his supervisor told him several times that he was going to "kick his black ass" did not amount to a racially hostile work environment). *McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008) (instances of racially derogatory language over a period of two-and-a-half years were "too sporadic and isolated" to qualify as severe or pervasive); *Lattrece Lockeet v. Choice Hotels Int'l, Inc.*, 315 Fed. Appx. 862, 866-67 (11th Cir. 2009) (finding insufficient supervisors' frequent vulgar remarks and multiple touching incidents over the course of four months); *Guthrie v. Wallace House Inc.*, 450 Fed. Appx. 1238, 1247 (11th Cir. 2012) (finding insufficient "a few dozen" vulgar comments or actions, including physical touching,

over 11 months).

Second, following an employee at work is insufficient evidence to establish a racially hostile work environment. *Davis v. United States Postmaster*., 190 Fed. Appx. 874, 876 (11th Cir. 2006) (Plaintiff's allegations that included "monitoring his work excessively," "followed him throughout the day; preventing him from talking to other co-workers" and "closely monitoring his movements at work" is not actionable); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247-49 (11th Cir. 1999) (en banc) (supervisor that "constantly followed the plaintiff and stared at her, twice made a "sniffing motion" in the plaintiff's groin area, rubbed his hip against the plaintiff's hip while touching her shoulder and smiling, and once told the plaintiff, "I'm getting fired up" had not engaged in severe or pervasive conduct).

The cases relied on by Harris on appeal are readily distinguishable.  For example, Harris' citation to *Dees v. Johnson Controls World Services, Inc.* is of no help to Harris' case.  That case has starkly different facts.  In this case, Appellant said she was followed around daily and had to have an assistant provide her access to a supply cabinet.  Neither action was accompanied by any statement or action that could remotely be characterized as based on Harris' race, nor is either alleged action adverse or harassment based on race.  During this alleged following around, there is not even allegation that any racial comment made.  In contrast, in *Dees*, this Court described the harassment as follows:

This almost-daily abuse took a variety of forms, from sexually explicit *419 stories and jokes, to comments about her body or those of male firefighters, to physical harassment. On one particularly humiliating occasion, **Jacobs asked Dees to sit on his lap**. When she refused, Jacobs picked her up and **squeezed her so hard that she urinated in her pants**. Jacobs, laughing, then told the other firefighters what had happened. On another occasion, **Stewart ground his groin into Dees' buttocks after stating "look at that sexy mama, I could just eat you in that skirt**." Rainey **propositioned Dees on a number of occasions, whispering in her ear that she was "the kind of woman I like; you're not only beautiful, you're hot-blooded," or telling her that she needed a "sugar daddy" and that with a body like hers, she would not have to work if she listened to him. On numerous other instances, the four men grabbed or slapped Dees' buttocks, groped her leg, or otherwise touched her in a sexually suggestive manner.** According to Dees, she had no way of ending the abuse.

*Dees*, 168 F.3d 418-19. (emphasis added).   Similarly, Harris' citation to *Miller v. Kenworth of Dothan, Inc*. is also inapposite as that case involved daily racial epithets 3-4 times per day every day.   In this case, the alleged Carreno statement was allegedly made once in September 2015 and never again.   In summary, Harris' citation to case law does not support her hostile work environment claim on appeal.

### 3.  Harris "Background Evidence" Argument Should Not Be Considered for the First Time on Appeal.

Harris was represented by two experienced lawyers before the District Court. and they did not argue to t the District Court that the events that allegedly transpired at Jackson North prior to her transfer to Jefferson Reeves was background evidence that supported her hostile work environment claim.   As such, JHS did not offer any arguments as to whether the Jackson North events should be considered as

background evidence in its Reply Memorandum in support of its Motion for Summary Judgment.

Consequently, the District Court found that "Plaintiff does not argue that that the discrimination she claims she faced at Jackson North prior to December 8, 2015 is background evidence included to contextualize the incidences for which she timely filed a claim.  Further, Plaintiff does not reference any incidents that took place prior to December 8 in her Response… Accordingly, the Court does not consider events that took place prior to that date in determining whether Plaintiff's hostile work environment can survive the Motion."  [ECF No.  49-15]

Yet on appeal, Harris claims that  she did raise the Jackson North events to the district court as "background evidence" to support her hostile work environment claim in her Response even though she admits that she did not mention "background" or "background evidence" or cite any authority in support of the background evidence theory. (App. Br. p. 20).  Instead, Harris argues that the District Court had a duty to somehow divine the "background evidence" argument from the clues Harris left scattered in her Response.  Harris is incorrect.  No such duty exists that requires the District Court to glean arguments that Harris' lawyers did not clearly spell out in her Response.  *Roark v. 3M Company*, 339 F.R.D 127, 129 (E.D. Kentucky Aug. 3, 2021) ("the Court will not scour the record to divine Plaintiff's unasserted arguments").  Simply put, the District Court did not have a duty to read

into Harris' Response a legal theory that she did not raise. Accordingly, the District Court's Order should be affirmed.

Had Harris raised the "background evidence" argument below, JHS would have noted that it is wholly inapplicable to this case. It is well settled that background evidence should only be considered if the supervisors are the same. Here, the supervisors at Jackson North and at Jefferson Reeves are not the same. Indeed, the centerpiece of Harris' hostile work environment claim is Carreno who never even worked at Jackson North and only started working with Harris in March 2015 at Jefferson Reaves. And Harris concedes that her and Carreno got along just fine with no problems for the first six months. (See App. Brief at 15) ("Ms. Harris and Ms. Carreno had an amicable working relationship during the first six months they worked together"); (*Id*. at. 4) (most of Ms. Harris's allegations regarding her treatment at Jefferson Reaves center around Ms. Carreno). Thus, even if background evidence at Jackson North would have properly argued, it would be disconnected from Carreno since she did not even work at Jackson North and when Carreno and Harris worked together, Harris admits their relationship was amicable thereby refuting any connection with Harris' experience at Jackson North in years past. Accordingly, the background evidence is theory. Appellant advances for the first time on appeal would not apply even if it had been properly presented to the court. *Chughtai v. Kaiser Permanente*, 2018 WL 3049198, *6 (June 10, 2018) ("relevant

background evidence may exist if it 'involved' the same type of employment actions … and were perpetrated by the same manager."); *Holly v. N.C. Dept. of Admin.*, 846 F. Supp. 2d 416 (E.D. N.C. 2012) (background evidence is only applicable if the supervisors are the same.

Furthermore, Additionally, background evidence or occurrences cannot be used as a substitute for proof of actual harassment during the limitations period. *Thurston v. Henderson*, 230 F.3rd 1347 1 (1st Cir. 2000) ("Although it is true that time-barred events may be considered as relevant background evidence, these occurrences cannot be used for proof of actual harassment during the limitations period. Thus, [plaintiff] first was required to adduce proof that a hostile work environment existed. As the district court painstakingly explained … he has failed to do so.") (citations omitted).

### 4. Harris Cannot Argue that Carreno Asked for Pictures and Information from a Co-Worker for the First Time on Appeal

Startingly, for the first time on appeal, Harris argues that Carreno asked "a co-worker [Medical Assistant Gino Miyorga] if he had any pictures or information that would support getting her fired to buttress her hostile work environment claim." (App. Br. p. 6) (See also pp. 9, 14, 15, 16) A review of Plaintiff's Response to JHS' Motion for Summary Judgment reflects that Harris did not raise this argument below. Indeed, Harris never even mentioned Gino Mayorga or a request for pictures

or any information that support getting Harris fired. Harris, moreover, did not even reference the Gino Mayorga picture request in her Response in Opposition of Material Facts.

As such, the District Court did not consider this argument in awarding summary judgment. Because facts and arguments concerning Gino Mayorga were not even mentioned by Harris before the district court they cannot be considered for the first on appeal. *Access Now, Inc., v. Sw. Airlines Co*., 385 F.3rd 1324, 1331 (11th Cir. 2004) (This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court"); *Echeverria v. BAC Home loan Servicing. LP*., 523 Fed. Appx 675, 678 (11th Cir. 2014) ("The problem is that the plaintiff did make this argument below in their response to the motion for summary judgment …. As result, we will not consider the argument here."). See *Adler v. Duval Cnty*. Sch Bd., 112w F.3rd 1474, 1481 . 12 (11th Cir. 1997) (noting in a civil case that, absent plain error, "it is not our place as an appellate court to second guess litigants and grant relief … based on facts they did not relate). Accordingly, the District Court's order should be affirmed.

### 5. **One Racially Derogatory Statement Over 16 Months is Insufficient to Establish a Hostile Work Environment.**

JHS argued in its motion for summary judgement that because Carreno was alleged to have made one derogatory statement about her race during the nearly 16 months that Carreno was in her chain of command, Harris did not establish a *prima*

*facie* case of a racially hostile work environment.  To be clear, Carreno became the Associate Director of Ambulatory Services in March 2015 and Harris was terminated by CNO Nieves on December 21, 2016, and a single derogatory statement is insufficient to make out a *prima facie* case of racially hostile work environment. *McCann v. Tillman,* 526 F.3d 1370, (11th Cir. 2018) (two or three instances of racially derogatory language alone, extending over a period of two years, was too sporadic and isolated to establish a hostile work environment claim).  Accordingly, Harris has failed to demonstrate that the District Court erred in granting summary judgment on Harris' hostile work environment claim.

### C. THE DISTRICT COURT PROPERLY AWARDED SUMMARY JUDGMENT AS TO PLAINTIFF'S RETALAITION CLAIMS

#### 1. Plaintiff Cannot Argue for the First Time on Appeal that her Internal Complaints Amounted to Protected Activity

In Counts I and IV of the Amended Complaint, Harris' alleged that she was dismissed on December 21, 2016, because she filed a charge with the EEOC on December 8, 2016. [ECF No. 19] In granting summary judgment, the District Court held that "Plaintiff makes no showing that CNO Nieves was aware that Plaintiff had filed the EEOC charge. In the absence of any evidence to establish this connection, and in light of Plaintiff's abandonment of the issue in her response, the Court agrees that Plaintiff has not made a *prima facie* case of retaliation case based on her having

filed a charge with the EEOC." [ECF No. 49]

On Appeal, Harris does not quarrel with the District Court's conclusion that Harris failed to establish a *prima facie* case of retaliation stemming from her EEOC charge. Instead, Harris argues now that she established a *prima facie* case through an internal complaint of discrimination and protected activity. (App. Br. pp. 31-47).

The problem with this argument is that Harris did not raise it below. When Defendant raised the argument that CNO Nieves was not aware of Harris' EEOC Charge, Harris did not respond to this argument. JHS also argued in its motion that the District Court could not consider Harris' internal complaints of discrimination because these complaints were not good faith protected activity._ JHS argued that Harris did not have a good faith reasonable belief that the actions she opposed would be unlawful under Title VII and emphasized that Harris did not have an objectively reasonable belief that she was discriminated because of her race. Harris again did not respond to this argument. As the district court pointed out, "Defendant argues that Plaintiff did not have an objectively reasonable belief that she was discriminated on the basis of race and or national origin. Plaintiff does not respond to this argument but contends that she had never been written up until after she complained of discrimination." [ECF No. 19]. And yet now on appeal, Harris attempts to argue that an internal complaint be considered the predicate protected activity. This must be rejected for much the same reason as many of Harris' arguments on appeal – she

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151

did not adequately present them to the district court. Simply, put, Harris cannot advance this argument now. *Towns v. Directors Guild of America, Inc*. et. al. 20022 WL 169017, 4 (11th Cir. 2022) ("The problem for Town is he raises this issue for the first time on appeal. We generally do not consider issues raised for the first time on appeal.") citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3rd 1324, 1331-32 (11th Cir. 2004) ("The reason for this prohibition is plain: as a court of appeal, we review claims of judicial error in the trial court").

### 2. Plaintiff Cannot Establish *Prima Facie* Case Of Retaliation As To Her Suspensions or Termination Based on her Internal Complaints

Even assuming that Harris had responded to JHS' argument below, the underlying conduct of which allegedly Harris complained to JHS Managers was (1) Carreno's statement "Blacks are lazy;" (2) Carreno tapped her shoulder in 2016; and (3) Carreno followed her at work is insufficient to establish that she had an objectively reasonable belief that she was discriminated on the basis of race and or national origin.

In order for a Plaintiff to engage in expression or conduct protected by Title VII, she must have a "good faith … reasonable belief that the actions [s]he is opposing would be unlawful under [Title VII]." *Weeks v. Harden Mfg. Corp*., 291 F.3d 1307, 1312 (11th Cir. 2002).

A "good faith reasonable belief" has a subjective component and an objective

component: a plaintiff must show that she subjectively believed in good faith that her employer was engaged in unlawful employment practices, and that her belief was objectively reasonable in light of the record evidence. *Butler v. Ala. Dep't of Transp.*, 536 F. 3d 1209, 1314 (11th Cir. 2008). The objective reasonableness of a plaintiff's belief that she has been discriminated against is evaluated in light of the existing substantive law; in other words, the conduct opposed need not actually be unlawful under Title VII, "but it must be close enough to support an objectively reasonable belief that it is." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).

Opposition to the remark "Blacks are lazy" and that Carreno tapped her shoulder is not statutorily protected activity under Title VII. *Barrow v. Ga. Pacific Corp.*, 144 Fed. Appx. 54, 57 (11th Cir. 2005) (holding that where black employee claimed his supervisor told him several times that he was going to "kick his black ass" did not amount to a racially hostile work environment); *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1266 (7th Cir. 1993) ("Evidence of a supervisor's occasional or sporadic use of a slur directed at an employee's race, ethnicity, or national origin is generally not enough to support a claim under Title VII") (collecting cases).

Simply put, Harris did not have an objectively reasonable belief that she was discriminated on the basis of race or national origin based on current precedent. It is

important to emphasize that the Plaintiff only relied on a select number of facts before the district court to show that she made internal complaints.  But as the District Court found, Harris failed "to cite to any record evidence that would indicate she made the [internal] complaint, who she complained to, and what exactly she complained of.  Each of her citations are merely portions of her deposition where she indicated that she complained of discriminatory conduct at some point prior to receiving discipline. [ECF No. 49] Accordingly, Harris' alleged verbal complaint regarding Carreno's alleged harassment and that she was followed, were not adequately presented before the district court to demonstrate an objectively reasonable belief of a Title VII violation.  Accordingly, Harris' internal complaint argument was properly insufficient to avoid summary judgment below.

Finally, Harris argues for the first time on appeal that CNO Nieves had knowledge of her internal complaints.  (App. Br. p. 33) As the District Court observed, Harris never addressed this argument below. [ECF No. 49-10-11] Therefore, this argument should not be considered.  In any event, the undisputed record evidence before the District Court is that CNO Nieves did not have knowledge of the internal complaints.  Harris' citations to her deposition on appeal does not change that Harris' now claims that CNO Nieves' statement that "she is not like that" may be read or inferred to mean that she had knowledge is speculation at best.  The District Court's Order should be affirmed as to the retaliation claims.

## D. HARRIS CANNOT SHOW ANY CAUSAL CONNECTION BETWEEN CARRENO'S ALLEGED UNLAWFUL ANIMUS AND HER SUSPENSIONS AND TERMINATION

### 1. CNO Nieves Conducted An Independent Investigation Before Dismissing Plaintiff

In its Motion for Summary Judgment, JHS argued that CNO Nieves conducted an independent investigation and met with Harris to hear her side of the story before determining that termination was appropriate. [ECF 32-9 ¶ 12] CNO Nieves' independent investigation makes the decision to terminate Harris free of alleged discriminatory or retaliatory bias. (*Id*.).   CNO Nieves' independent investigation of the allegations that led to Harris' termination, as well as the additional independent review conducted by Campos-Marquetti at the grievance hearing, forecloses any suggestion that Harris' termination was a result of Carreno's allegedly unlawful influence.  *Anterio v. City of High Springs*, 762 Fed. Appx. 891, 899 (11th Cir. 2019) ("If, however, a decisionmaker conducts its own evaluation and makes an independent decision, the decision is free of the taint of a biased subordinate employee."). Harris, moreover, did not respond to the independent investigation  argument and the District Court did not need to reach it.  This is another reason why the District Court's Order should be affirmed.

Here, Harris' discrimination and retaliation case is premised on her belief that JSH's decision to discipline her was a result of Carreno's alleged discriminatory animus. Harris' suspensions were based on events, like Harris' tardiness,

absenteeism or patient complaints, that were unrelated to Carreno. (*Id*.). None of the DARs were even issued by Carreno.

Additionally, as to her termination, it is undisputed that Carreno did not draft the DAR or recommend termination and that only CNO Nieves had the authority to fire Harris. (*Id*.). No reasonable jury could find on these facts that CNO Nieves' decision to terminate Harris was a result of Carreno's alleged discrimination or retaliation bias. Accordingly, Harris cannot establish causation and the District Court's Order should be affirmed.

### E. HARRIS CANNOT SHOW THAT JHS' REASONS FOR DISCIPLINING AND DISMISSING HER WERE A MERE PRETEXT FOR DISCRIMINATION OR RETALIATION

Even assuming that Harris did  establish a *prima facie* case of race discrimination, she still failed to show that the PHT's reason for disciplining her— repeated violations of JHS Personnel Rules—was a mere pretext for unlawful discrimination. Accordingly, the District Court's Order should be affirmed.

When a plaintiff establishes a *prima facie* case of discrimination or retaliation, the employer must then articulate a legitimate, non-discriminatory reason for its actions. The employer's burden in this respect is one of production only, as it need <u>not</u> persuade the court that it was actually motivated by the proffered reasons.

Once the employer articulates a reason or reasons for its decision, the "factual inquiry proceeds to a new level of specificity," as the employee must meet each of

the employer's reasons head on and put forth specific facts, showing that each of the reasons given by the employer is a pretext for intentional discrimination. (*Id*.). If the employer's belief was reasonably based on the information that it had available to it at the time of the decision, then no pretext has been shown. *Baker v. Russell* Corp, 372 Fed. Appx. 917, 920 (11th Cir. 2010) ("[w]hether an employee actually engaged in the misconduct that was reported to the decisionmaker is irrelevant to the issue of whether the decisionmaker believed that the employee had done wrong."); *Ikejiani v. Dade County Public Health Trust*, 2003 WL 157233, at *6 (S.D. Fla. Feb. 18, 2003) ("The question . . . is not what actually transpired on that day . . . the question is whether Dade County acted in good faith in determining what transpired on that day and whether it acted out of racial animus.").

Finally, for the retaliation claim, Harris had a high burden to meet on causation before the district court because she had to demonstrate with evidence that her EEOC charge was the "but-for" cause of her dismissal.  As this Court has previously stated:

> the plaintiff seeking to establish retaliation in the employment discrimination context faces the hurdle of showing that the protected activity was the **but-for** cause of the discrimination.  The Supreme Court has indicated that to make out retaliation discrimination against an employer, the plaintiff must establish that the retaliation would not have occurred **but for** the exercise of her rights.

*Blackshear v. Univ. of Ala.*, 2013 WL 5934653, *6 (N.D. Ala. 2013), citing

*University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2528 (2013)(emphasis added).    With these established principles in mind, Appellant failed to demonstrate a basis for avoiding summary judgment on the basis of pretext for either disparate treatment discrimination or retaliation.

### 1.  Dismissal By CNO Nieves

Here, JSH has presented evidence that CNO Nieves terminated Harris because Harris  violated JHS's Personnel Rules.  Harris had a poor  record which included a record of  counseling,  two  written  reprimands,  a  3-day  and  a  5-day  suspension. Additionally, Harris was insubordinate to RN Lys, as described in Nurse Milanes' email. [ECF No.  32-9 ¶ 29]

Finally,  RN  Francois  Jean  Marie  witnessed  Harris  call  her  supervisors "bitches" and that Harris was going to get them fired.  [ECF No. 33; Decl. Marie Jean Francois].  It is indeed ironic that Harris is suing her employer for employment discrimination and retaliation when it was Harris who violated the principles of Title VII by calling her all-female supervisory chain of command "bitches" including two of whom (RN Lys and Freeman) who are Black.  Being dismissed in part for using derogatory Title VII violating language towards your supervisory chain cannot be a basis for suing the employer's supervisory chain of command that the employee victimized with her sexist language.

Harris may disagree with CNO Nieves' reasons for discharging her but she

cannot show that the articulated reasons were not the real reasons for terminating her and that the real reason was unlawful discrimination under Title VII. *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) ("The  inquiry … of the ADEA is limited to whether [the decisionmaker] believed that Elrod was guilty of harassment and if so, whether this belief was the reason behind Elrod's discharge.").

JHS properly relied on Nurse Milanes' email describing Harris insubordination directed at RN Lys and the events wherein Harris called her supervisors "bitches" in deciding that termination was appropriate. Additionally, CNO Nieves also reviewed Administrator Freeman's memorandum chronicling poor disciplinary history leading up to her dismissal. (*Id.*).   As the District Court noted "particularly telling is a document prepared by Admin. Freeman in anticipation of Plaintiff's termination summarizing the pattern … of disruptive behavior and tardiness/absenteeism going back as far as February 2014." [ECF No. 49-9]

Finally, CNO Nieves reasons for termination were then tested in yet another proceeding – the third step grievance hearing under the CBA -  before Campos-Marquetti where Harris was represented by a Union representative. At the independent grievance hearing pursuant to the CBA, Union Regional Coordinator Herdocia **admitted** that Harris acted inappropriately to RN Ros Lys.  On these facts, no jury could conclude that the JHS's reasons for dismissing Harris were a mere

pretext for unlawful discrimination. *Jolibois v. Florida International University*, 92 F. Supp. 1239 (S.D. Fla. 2015) (university had legitimate non-discriminatory reasons for suspending and terminating professor – his poor performance - and these reasons were tested before a hearing examiner), *aff'd* 654 Fed. Appx. 461 (11th Cir. 2016).

### 2. Three-Day And Five-Day Suspensions

Similarly, JHS had legitimate non-discriminatory reasons for suspending Harris for 3 and 5 days. The 3-day suspension was based on Harris' tardiness and absenteeism as reflected on the Kronos records. Indeed, Harris, admitted that she was tardy.

As to her 5-day suspension, Harris cannot dispute that she was again tardy and patient  Patient Contreras complained about her conduct. [ECF No. 32-7 ¶ 22]  Ms. Contreras' written complaint describing Harris' discourteous conduct is attached to the DAR and is grounds for discipline. (*Id.).* Accordingly, the District Court's Order should be affirmed as to the discipline before the dismissal.

On appeal, Harris fails to take the legitimate non retaliatory reasons for her suspensions and termination "head  on". *Chapman v. AI Transp*., 229 F.3d 1012, 1030 (11th Cir. 2000) (Plaintiff must "meet [each] reason head on and rebut it …"); *Chandler v. Georgia Dept. of Health*, 861 Fed. Appx. 296, 301 (11th Cir. 2021) ("Because these reasons would motivate a responsible employer, plaintiff must address each reason head on and rebut it. Plaintiff failed to do so; so she cannot

prevail …").   For example, Harris does not contest that she was absent as reflected in the Kronos records that led to her 3-day suspension.  Harris, moreover, does not contest that she was indeed late to work as she admitted in her  deposition.  Indeed, as the Court noted " [t]he incidents of purported tardiness and absences alone are dispositive, as Plaintiff would have had to persuade the Court that the Kronos records that Defendant relied on in administering discipline were in some way fraudulent or misrepresented."  [ECF No. 49] Beyond that Harris does not contest that a patients complained that she was rude and treated them poorly.   Because Harris does not rebut each of these reasons "head on" the District Court's Order should be affirmed.

Furthermore, Harris does not take the further necessary step to demonstrate that CNO Nieves, Administrator Freeman and RN Lys did not have a reasonable belief in the basis for the discipline each of them issued which is what is required to avoid summary judgment.

Instead, Harris argues that JHS' the legitimate reasons for her suspensions and termination are pretext for unlawful retaliation and relies solely on "Harris testimony, the timing and frequency of the disciplinary actions"  and Ms. Wells testimony. (App. Br. pp. 43-47).  The District Court cogently addressed these arguments in its Order.

First,  as to Harris testimony that she did not commit the infractions  that she was charged with, the District Court found that "while Plaintiff disputes that she was

not excessively tardy or absent, as well as whether she acted improperly towards patients or was insubordinate, she fails to offer evidence that CNO Nieves and other management who contributed to her suspension did not sincerely believe that these incidents occurred." With that showing, Harris fails to show that the District Court erred. *See Baker v. Russell* Corp, 372 Fed. Appx. 917, 920 (11th Cir. 2010) ("[w]hether an employee actually engaged in the misconduct that was reported to the decisionmaker is irrelevant to the issue of whether the decisionmaker believed that the employee had done wrong.").

Second, as to the timing of Harris complaints and the discipline at issue, the District Court found that Harris "fails to cite to any record evidence that would indicate she made the complaint, who she made the complaints to, and exactly what she complained about. …Each of her citations are merely portions of her deposition where she indicated that she had complained of discriminatory conduct at some point prior to receiving discipline. See (ECF No. 32-5) at 211:1-3; 212:14-19; 215:23-126; 217:5-16; 22:11-13." [ECF No. 49-12] Clearly, Harris' vague statements as to the timing of the discipline does not establish pretext. Additionally, it is important to note that Harris received discipline for the same type of misconduct- being rude to patients - at Jackson North in 2014 before she transferred to Jefferson Reeves. [ECF No. 49-2].

Third, Ms. Mells' conclusory statements that non-African American were

under less stress than and asked to perform different types of tasks does not support Harris' argument. The District Court found that the Mells' declaration did not establish that "these Non African American nurses were LPN2s, whether they has the same supervisors, or whether their employment and disciplinary histories in any way resembled Plaintiff's." [ECF No. 49] In her declaration, Ms. Mells' does not even name a particular JHS supervisor.

Finally, Harris subjective belief that she was disciplined because she verbally complained of discrimination is insufficient to establish pretext. Harris "testified that the disciplinary actions she faced were retaliation for reporting Ms. Carreno's slur" and that "[s]he also believed she was targeted for disciplinary actions more than other employees …. And disputes each account of insubordination, providing reasonable explanation." (App. Br. p. 46). This conclusory assertion does not address how her "beliefs " rebut each and every reason for the disciplines at issue. See *Seldon v. Total Servs., Inc.,* 653 F.2d 1349, 1381 (M.D. Ga 2009)("Standing alone, Plaintiff's subjective beliefs that she was not insubordinate and uncooperative and therefore did not deserve to be disciplined is insufficient to create a genuine issue of material fact regarding pretext").

## III. CONCLUSION

The District Court's Order should be affirmed because Defendant Public Health Trust suspended and then dismissed  Appellant Harris because she was repeatedly tardy, absent, rude to patients, blatantly  insubordinate and even called her all female team of supervisors "bitches."  As such, the Public Health Trust had legitimate non-discriminatory, non-retaliatory reasons for suspending and then terminating her. Additionally, she did not establish a *prima facie* case of racial harassment. Appellant provides no basis for reversing and mostly relies on arguments not raised or developed below.  Accordingly, the District Court's order granting summary judgment should be affirmed.

Respectfully submitted,

GERALDINE BONZON-KEENAN
MIAMI-DADE COUNTY ATTORNEY

By: *s/Eric A. Rodriguez*
    Eric A. Rodriguez
    Assistant County Attorney
    Florida Bar No. 970875
    Miami-Dade County Attorney's Office
    Stephen P. Clark Center
    111 N.W. 1st Street, Suite 2810
    Miami, Florida 33128
    Phone:  (305) 375-5151
    Fax:    (305) 375-5634
    Email:   ear2@miamidade.gov

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because it contains 10,581 words, excluding the parts of the brief carved out by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the style requirements of Fed. R,. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on April 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ Eric A. Rodriguez*
Assistant County Attorney

46

## SERVICE LIST

| | |
|---|---|
| Thomas V. Burch | Eric A. Rodriguez |
| Anna W. Howard | Assistant County Attorney |
| Courtney Hogan, Student Counsel | Florida Bar No. 970875 |
| Kirstiana Perryman, Student Counsel | Miami-Dade County Attorney's Office |
| Appellate Litigation Clinic | Stephen P. Clark Center |
| University of Georgia School of Law | 111 N.W. 1st Street, Suite 2810 |
| 225 Herty Drive | Miami, FL 33128 |
| Athens, GA 30602 | Tel: (305) 375-5151 |
| Tel: (706) 542-5236 | Fax: (305) 375-5634 |
| Email: tvburch@uga.edu | Email: ear2@miamidade.gov |
| | |
| Attorneys for Plaintiff | Attorney for Defendants |
| *Served via CM/ECF* | No Service Made |

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY
TELEPHONE (305) 375-5151